HANSEL TYSON, Plaintiff

v.

SERGIUS WILKINSON, LORIS CAINES, DANZIL BURROUGHS,
WEST INDIAN CO., LTD., Agent for S.S. Skyward, Defendants

Civil No. 1230-71

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

July 26, 1972

VERNE A. HODGE, ESQ., St. Thomas, V.I., *counsel for the plaintiff*

THOMAS D. IRELAND, ESQ., St. Thomas, V.I., *counsel for the defendants*

HOFFMAN, *Judge*

### MEMORANDUM OPINION AND JUDGMENT

This matter came on to be heard on June 20, 1972 at which time the plaintiff was represented by Verne A. Hodge, Esq. and the defendants by Thomas D. Ireland, Esq. At a prior hearing on March 15, 1972 defendant West Indian Co., Ltd.'s motion to dismiss was granted with plaintiff's consent.

After hearing the testimony of the parties and the arguments of counsel and after due consideration of the evidence presented the Court finds the facts to be as follows: the plaintiff and the three individual defendants were members of a calypso band which performed on board the M/S Skyward. At some time during May or June of 1971 the members began to consider the possibility of recording an album for sale to the cruise ship passengers. The leader of the group, defendant Wilkinson, through representatives of the M/S Skyward made certain arrangements with a recording company in Florida whereby he advanced the sum of $1,250.00 to cover the cost of producing 1,000 copies of the record. The arrangement with the recording company required the band to pay $1.25 per finished record including jacket. The leader and the three band members

also made the following arrangements: they agreed to charge five dollars per album. They agreed that the first $1,250.00 realized from the sale of the albums would go to the leader, defendant Wilkinson, as repayment for his advance of the production cost. They agreed that defendant Wilkinson would receive an additional $200.00 for his services as the band leader. Finally, they agreed that the profits derived from the sales would be divided equally among them. This case is before the Court, however, because the parties failed to make further agreements respecting the album. Most crucial for the purposes of this suit was their failure to provide for the following: the manner of selling the records and the compensation therefore and the real possibility that a member might leave the group. In addition the testimony disclosed that they did not form a realistic estimation of the expenses incident to the venture.

In July of 1971 shortly before the completed records were received the plaintiff left the ship and terminated his relationship with the group. When faced with his loss the remaining members were forced to engage a replacement and when confronted with the arrival of 1,000 records they were compelled to grapple with the task of distribution. The plaintiff has testified that the band members were not allowed to make any of the sales by virtue of their employment arrangement with the ship; that only other crew members were authorized to perform this work; and that, therefore, he is entitled to the same amount of compensation as the other three members. The Court finds the facts to be otherwise. The Court finds that the band members and other members of the crew were required to make the sales and that the sales had to be made on board the ship. Had the band faltered in this effort there would have been no compensation for any of the members. The zeal of the members in their sales campaign is reflected by the

additional performances they staged for the passengers and the special acts they provided to promote the album while the ship was approaching the various ports on its cruise. Between sets and after their shows the defendants each expended considerable energy in selling the album. The Court finds that some 850 albums were sold by the defendants in this manner. It further finds that approximately 150 albums were sold by other members of the Skyward's crew, but that these sales involved an additional expense for the band since the seller had to be paid fifty cents per album sold. After a four and a half month effort the entire stock of 1,000 albums was sold except for an undetermined number which were given away.

After the records had been sold and the various expenses (shipping fee from recording company; postage for mail order sales; payments to crew for outside sales; payment to defendant Wilkinson for his advance and bonus as leader; payment to drummer who performed during the recording session; payment to plaintiff's replacement for his efforts; etc.) deducted the three defendants each received $700.00 and the plaintiff in October of 1971 was paid $300.00. In his complaint the plaintiff argues that he is entitled to an additional $450.00. Plaintiff at trial claims that he is entitled to the same compensation, i.e., $700.00, that each of the defendants received. The plaintiff argues that in the original arrangement compensation was based solely upon performance at the recording session; he admits that he took no part in the sales effort.

██ In the Court's opinion implicit in the agreement to divide profits was the assumption that profits would first have to accrue. The Court has concluded that the records had to be sold on the ship and that the sales by the defendants were the primary generator of profits. The Court concludes that the agreement of the parties must be con-

strued to contain an implied term calling upon the members to render assistance in making sales. As stated in 17A C.J.S., Contracts, § 328: "In the absence of an express provision therefore, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purposes for which the contract was made."

■ While Courts do not generally favor implied contracts, a term may be implied where it appears necessary to infer it in order to effectuate the full purpose of the contract. See cases cited at 17A C.J.S., Contracts, § 328, n. 43.5. While defendant Wilkinson at trial testified that the topic of record sales did not constitute a substantial part of the original negotiations and defendant Caines testified that the parties did not discuss what course they would follow if a member left the group, the Court is compelled to assume that had the parties attention been drawn to these matters they would have agreed to follow the course of action which the defendants have taken. The Court holds then that the agreement of the parties contained an implied term which provided that a member's compensation would be based upon his work in selling the record in addition to his musical performance in the recording session. While the retiring member would certainly be entitled under the agreement for fair compensation for his services during the recording session, the Court is convinced that the defendants in this matter have fully compensated the plaintiff for his performance. The defendant Caines testified that on a previous occasion he received $130.00 as compensation for his musical performance in the recording session of such an album. The defendant Wilkinson testified that the outside drummer who merely performed with the others during the recording session was paid $150.00. Under the circumstances the Court con-

107

cludes that the $300.00 which the plaintiff received was just remuneration for the reasonable value of his musical performance. It is therefore

ORDERED that Defendants are entitled to Judgment against the Plaintiff dismissing the Complaint with costs of $4.00. Each party shall bear his own attorneys fees.